UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LABORERS PENSION TRUST FUND-
DETROIT AND VICINITY, LABORERS
VACATION AND HOLIDAY TRUST
FUND - DETROIT AND VICINITY,
LABORERS METROPOLITAN DETROIT
HEALTH AND WELFARE FUND,
LABORERS ANNUITY FUND - DETROIT
AND VICINITY, and MICHIGAN
LABORERS' TRAINING FUND,

          Plaintiffs,

v.

INTERIOR EXTERIOR SPECIALISTS
COMPANY and LLAMAS GROUP CORP.,

          Defendants,

and

TRUSTEES OF THE PAINTERS UNION
DEPOSIT FUND,

          Intervenor.
_____/

Case Number: 04-74514
Honorable David M. Lawson

**ORDER GRANTING IN PART JOINT MOTION SEEKING JUDICIAL
DETERMINATION OF RIGHT TO HELD PAYMENT PURSUANT TO
TEMPORARY AGREEMENT, MICHIGAN LAW, AND PARTIES'
TENTATIVE SETTLEMENT AGREEMENT**

This matter is before the Court on the plaintiffs' and defendants' joint motion seeking a judicial determination of their rights to a fund of money identified by the parties as the "Held Payment." That fund was created under an agreement made by the plaintiffs and defendants to secure payment of a judgment for the plaintiffs that the defendants challenged on appeal. Intervenor Trustees of the Painters Union Deposit Fund (PUDF) obtained a judgment against the defendants

in a separate matter and now claims a superior right to the Held Payment. PUDF filed a response in opposition to the joint motion, and the Court heard oral argument on September 12, 2011. The Court now finds that the plaintiffs have a superior right to the Held Payment, which has served as the functional equivalent of a supersedeas bond, and may apply the fund to satisfy their judgment in an amount to be determined by the Court or as agreed by the plaintiffs and defendants, as the case may be. PUDF then has the next priority to any amount remaining of the Held Payment, subject, however, to a reasonable attorney's fee in favor of the Law Firm of Steven A. Wright, P.C., the attorney for the defendants, whose efforts generated the remainder amount through Wright's semi-successful appeal. Finally, if any amount would remain thereafter, it would be applied to discharge the balance of Wright's attorney's charging lien that remains after the award of the reasonable attorney's fee.

I.

Defendants Interior Exterior Specialists Company (IES) and The Llamas Group Corporation (TLG) appealed an adverse money judgment entered against them by this Court in favor of the plaintiffs, following a bench trial in 2008. The plaintiffs, multiemployer benefit plan administrators for the benefit of members of Local 334 of the Laborers International Union of North America, AFL-CIO, alleged in their complaint that the defendants were liable for unpaid fringe benefits and brought suit under section 515 of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1145. Defendant IES had signed an opt-in agreement under a collective bargaining agreement with the Union Local, which the Court determined on summary judgment was binding on that defendant from at least April 6, 2000 through May 31, 2006. At trial, the Court found that defendant TLG was liable to the plaintiffs as the *alter ego* of IES. The Court also rejected IES's

contention that it overpaid its contributions to the plaintiffs by approximately 10,000 man-hours and was entitled to credit for the overpayments.

The Court entered judgment in favor of the plaintiffs in the amount of $167,501.34 in unpaid fringe-benefit contributions and $33,500.29 in liquidated damages — totaling $201,001.63. The Court entered a corrected opinion on October 2, 2008. The defendants timely appealed. During the pendency of the defendants' appeal, the Court amended the judgment to award the plaintiffs attorney's fees in the amount of $112,500, bringing the total award to $313,501.63.

The defendants appealed the judgment to the Sixth Circuit but did not post a supersedeas bond. At the plaintiffs' request, this Court entered an injunction preventing the defendants from transferring assets while the appeal proceeded. The plaintiffs and defendants thereafter made a formal agreement (The Temporary Agreement) whereby (1) the defendants paid cash over to the plaintiffs (which became the "Held Fund") totaling $280,035.60, (2) the parties agreed to dissolve the injunction, and (3) the plaintiffs would have the right to the cash payment if the judgment was affirmed on appeal, but would refund all or part of the Held Fund as appropriate if the decision on appeal favored the defendants. The amount of the Held Fund represents the $201,001.63 judgment plus post-judgment interest from September 30, 2008, $112,500 in attorney's fees, $20,000 as security for attorney's fees that the plaintiffs may incur on appeal, less credit for $54,294.51 collected by the plaintiffs in partial satisfaction of the judgment. The Held Fund is in the custody of the Sachs Waldman, P.C. Client Trust Account, one of the law firms representing the plaintiffs.

The Temporary Agreement was signed on January 15, 2009. In the meantime, on March 18, 2008, PUDF obtained a judgment of $186,781.62 against the defendants in an unrelated matter, *Trustees of PUDF v. Interior/Exterior Specialist, Co.*, No. 05-70110, 2008 WL 724355 (E.D. Mich.

Mar. 18, 2008) (Roberts, J.). On February 10, 2009, those parties stipulated to an award of prejudgment interest to PUDF in the amount of $14,098.83, and on April 15, 2009, the parties stipulated to attorney's fees award to PUDF in the amount of $100,000. On April 7, 2010, the court of appeals affirmed the district court's judgment. On January 21, 2011, the court awarded PUDF appellate attorney's fees in the amount of $49,042.50.

PUDF has been trying to reach the Held Payment fund to satisfy its own judgment against the defendants. On November 16, 2009, PUDF served the first of several writs of garnishment on Sachs Waldman, PC; to date, PUDF has served 8 such writs upon that law firm. Sachs Waldman generally has denied any obligation under the writs because it believes the Held Payment is not the property of the defendants; instead, it is to be applied to satisfy the judgment entered in this case.

On February 5, 2010, attorney Steven Wright and his law firm asserted an attorney's lien in the amount of $86,508.59 against any and all proceeds, settlement funds, or other amounts that may be owed or become owed to IES and TLG, or any of their officers, subsidiaries, assigns, etc., for legal services rendered in this case.

Then on September 8, 2010, the Sixth Circuit decided the appeal and held that this Court erred in concluding that IES remained bound by the labor agreements during the 2003-2006 time period, but otherwise found no error in the Court's conclusions. The court of appeals held that IES successfully terminated its obligations to pay fringe benefits effective June 1, 2003. Under that holding, IES and TLG remained liable to the plaintiffs, but the court remanded the case to this Court to recalculate the damages owed to the plaintiffs based on the pre-2003 labor activity. The mandate issued on November 16, 2010.

On December 14, 2010, the plaintiffs filed a motion contending that recalculating the damages according to the court of appeals's holding entitled them to a judgment in the amount of $309,441.15, which included $137,606.87 in unpaid benefits, $85,917.14 in interest, and $85,917.14 in double interest. The Court heard oral argument on the plaintiffs' motion on February 25, 2011 and ordered supplemental briefing on the amount of contributions the Funds claimed were owed under the three Project Labor Agreements referenced in the motion for entry of judgment. The plaintiffs' motion remains under advisement.

In March 2011, the plaintiffs and defendants reached a tentative settlement agreement as to the amount owed after remand from the court of appeals. Although the precise terms of the agreement have not been disclosed to the Court, it appears that most of the Held Fund would be turned over to the plaintiffs and the balance would be paid to Steven Wright in satisfaction of his attorney's lien. There is no question, however, that the proposed distributions would exhaust the Held Payment fund.

On June 9, 2011, this Court granted PUDF's motion to intervene so that it could argue its contention that it is entitled to the Held Payment and has first priority to it. The issue is framed by the plaintiffs' and defendants' joint motion to determine the right to the held payment, to which PUDF has responded.

II.

The plaintiffs and defendants jointly argue the Temporary Agreement transfers ownership of the Held Payment solely to the plaintiffs in the absence of an agreement or judicial determination to the contrary; therefore, the Held Payment is not property of the defendant to which PUDF's writs of garnishment may attach. PUDF counters with the contention that the Temporary Agreement is

nothing more than a security agreement, and an invalid one at that; and once the court of appeals overturned this Court's judgment, the plaintiffs no longer had a perfected security interest in the Held Payment. Therefore, PUDF reasons, PUDF obtained a priority interest in the Held Payment when it served its first writ of garnishment on Sachs Waldman, P.C. and became a lien creditor. PUDF believes that its superior position defeats the plaintiffs' competing claim to the Held Payment and Steven Wright's attorney's lien.

### A. The Temporary Agreement

The construction and characterization of the Temporary Agreement is a matter of contract law. *Bonfiglio v. Harkema Assocs., Inc.*, 171 B.R. 245, 249 (E.D. Mich. 1994). State contract law provides the rules of decision. *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 372 (6th Cir. 1998). And the usual rules apply: the first objective is to "honor the intent of the parties," *Rasheed v. Chrysler Corp.*, 445 Mich. 109, 127 n.28, 517 N.W.2d 19, 29 n.28 (1994); the prime source of that intent is the plain language of the agreement, *Wilkie v. Auto-Owners Ins. Co.*, 469 Mich. 41, 61, 664 N.W.2d 776, 787 (2003); and if the language is "clear and unambiguous," the Court need look no further, *Haywood v. Fowler*, 190 Mich. App. 253, 258, 475 N.W.2d 458, 461 (1991). "'Where the language of the writing is not ambiguous the construction is a question of law for the court, on a consideration of the entire instrument.'" *In re Landwehr's Estate*, 286 Mich. 698, 702, 282 N.W. 873, 874 (1938) (quoting *Griffin Mfg. Co. v. Mitshkun*, 233 Mich. 640, 642, 207 N.W. 814, 816 (1926)). A contract is unambiguous if it "fairly admits of but one interpretation." *Allstate Ins. Co. v. Goldwater*, 163 Mich. App. 646, 648-49, 415 N.W.2d 2, 4 (1987). Courts should not read an ambiguity into an agreement where none clearly exists. *UAW-GM Human Res. Center*

*v. KSL Recreation Corp.*, 228 Mich. App. 486, 491, 579 N.W.2d 411, 414 (1998) (citing *Smith v. Physicians Health Plan, Inc.*, 444 Mich. 743, 759, 514 N.W.2d 150, 163 (1994)).

The language of the Temporary Agreement describes a clear arrangement to secure the plaintiffs' right to collect their judgment, exchanging the court-ordered injunction for a fund that would satisfy the judgment when the appeals are finished. The recital specifically states:

> [I]t is the mutual desire and intention of the parties to this Agreement to have collection efforts on the Judgment ceased until the end of the 6th Circuit Appeal upon the terms and conditions contained in this Agreement, while at the same time providing Plaintiffs with *adequate security* to satisfy the total amount of the Amended Judgment plus costs and attorney fees incurred by Plaintiffs as consequence of Defendants' 6th Circuit Appeal.

Joint Mot., Ex. A, Temporary Agreement at 2 (emphasis added). Paragraph 1 then calls for the defendants to "wire transfer the sum of $280,035.60 in immediately available funds to Plaintiffs, c/o of their attorneys' client trust account." *Ibid.* Once the funds were received, the parties agreed to file a stipulation dissolving the injunction. *Id.* ¶ 2. But the wire transfer did not amount to a transfer of ownership of the funds. Instead, the Temporary Agreement stated:

> 3. Holding Payments Pending Appeal and Disposition Following Appeal. Plaintiffs agree to hold the payment received pursuant to paragraph 1 above (the "Held Payment") in bank account(s) of their selection and at their sole and absolute discretion and not disburse the same to employees of Defendants until either a final settlement is reached among the Plaintiffs and Defendants or until the entry of a final judgment, order, mandate, decree, or further direction of the Court disposing of the Appeal taken in the 6th Circuit Appeal from the Judgment in this matter from which neither party has a right to appeal (the "Final Judgment"). Following entry of the Final Judgment, in the event (i) the Held Payment is not sufficient to satisfy same, Defendants shall, within ten (10) days of the Final Judgment's entry, pay Plaintiffs any amounts that remain due and owing pursuant to the Final Judgment; or (ii) the Held Payment exceeds the amount due and owing Plaintiffs pursuant to the Final Judgment, Plaintiffs shall, within ten (10) days of the Final Judgment's entry, refund to Defendants any excess amounts. Plaintiffs shall be entitled to retain any accrued interest earned on the Held Payment pursuant to the deposit of the Held Payment in the bank account(s) of their selection. Notwithstanding any refund that may be due Defendants following entry of the Final Judgment, and irrespective of the outcome

>of all appellate proceedings, it is expressly agreed that no interest is to accrue in favor of Defendants or is otherwise payable to Defendants in connection with the Held Payment.

*Id.* ¶ 3. The Agreement also required the defendants to prosecute their appeal diligently, *id.* ¶ 4, and the plaintiffs to forebear from collection activity, *id.* ¶ 5. The Agreement defined conditions of default, and allowed the plaintiffs access to the Held Payment if a default occurred. *Id.* ¶ 7.

It is quite evident, therefore, that the parties intended the fund to provide security for the judgment in exchange for forbearance from collection efforts during the appeal, much like a supersedeas bond would provide. The agreement had the hallmarks of a security agreement, not a transfer of ownership.

In an attempt to preempt this result, PUDF argues that the Temporary Agreement was not a valid security agreement because it did not evidence an intent to create a security interest on its face. There is no merit to that argument. First, courts are not limited to the four corners of a security agreement when determining whether it is valid. *Roan v. Murray*, 219 Mich. App. 562, 567, 556 N.W.2d 893, 896 (1996) (citing *NBD-Sandusky Bank v. Ritter*, 437 Mich. 354, 364-65, 471 N.W.2d 340 (1991)) ("[A]lthough a signed writing describing the collateral is required, the other requirements of an 'agreement' under the UCC may be established by parol evidence of course of dealings, usage of trade, or course of performance."). PUDF's argument that the parties' intent to create a security interest must be evident on the face of the document has no basis in Michigan law. Second, "[t]he necessary components of a security agreement under the UCC are minimal." *Roan*, 219 Mich. App. at 565, 556 N.W.2d at 895. "Indeed, it is highly questionable whether a written security agreement needs to state any terms of the security agreement other than to sufficiently describe the collateral." *Id.* at 567, 556 N.W.2d at 896. Third, the intent to "provid[e] Plainitffs

with adequate security" is obvious from the agreement. That language is contained in a recital, but the Temporary Agreement expressly states that the recitals are an "essential and integral part of th[e] Agreement." Aside from using the words "security interest" in the Temporary Agreement, it is difficult to see how the parties could have made any clearer their intent to create a security interest.

### B. Order of PUDF's Priority as Lien Creditor

A secured creditor has rights to the collateral. However, under Michigan law, a security interest is subordinate to the rights of an individual who becomes a lien creditor before the security interest is perfected. Mich. Comp. Laws § 440.9317(1)(b). A "lien creditor" includes "[a] creditor that has acquired a lien on the property involved by attachment, levy, or the like." Mich. Comp. Laws § 440.9102(zz)(*i*). "Michigan follows the general rule that a garnishment lien attaches upon service of the writ [of garnishment]." *Michigan Tractor & Machinery Co. v. Elsey*, 216 Mich. App 94, 97, 549 N.W.2d 27 (1996). PUDF, therefore, became a lien creditor on November 16, 2009 when it served its first writ of garnishment on Sachs Waldman, P.C. The question, then, is whether the plaintiffs had a valid and perfected security interest in the Held Payment before PUDF became a lien creditor.

Once again, state law tells us what is a security interest and when it is perfected. *United States v. Dishman Indep. Oil, Inc.*, 46 F.3d 523, 526 (6th Cir. 1995). A "security interest" is defined as "an interest in personal property or fixtures which secures payment or performance of an obligation." Mich. Comp. Laws § 440.1201(37). "A security interest attaches to collateral when it becomes enforceable against the debtor with respect to the collateral," Mich. Comp. Laws § 440.9203(1), and a security interest is enforceable against the debtor and third parties when the following conditions have been satisfied: "[v]alue has been given"; "[t]he debtor has rights in the

-9-

collateral or the power to transfer rights in the collateral to a secured party"; and "[t]he debtor has authenticated a security agreement that provides a description of the collateral." *Id.* § 440.9203(2). A "security agreement" is "an agreement that creates or provides for a security interest." Mich. Comp. Laws § 440.9102(ttt). A security interest in money is perfected by taking possession. Mich. Comp. Laws § 440.9313(1).

There can be no question that the plaintiffs acquired a perfected security interest in the Held Payment when it took possession of the funds on January 16, 2009. Value was given in the form of forebearance from collection activities; the defendants had rights in the funds transferred to the custody of the trust account because they retained the right to recover them if the appeal went their way; and the defendants executed the Temporary Agreement, which this Court has deemed a security agreement. Perfection occurred when the plaintiffs' attorneys took possession of the funds. All of that took place before PUDF became a lien creditor.

PUDF argues, however, that if there was a perfected security interest in the Held Payment, it was extinguished when the Sixth Circuit reversed the Court's judgment because the reversal nullified any obligation the defendants had to the plaintiffs. That argument is unconvincing.

It is true that a security interest exists only as long as the underlying debt or obligation exists. *In re Spaniak*, 221 B.R. 732, 735 (Bankr. W.D. Mich. 1998). But PUDF's premise — that the Sixth Circuit decision extinguished the defendants' debt to the plaintiff — is faulty. PUDF cites a single case as support: *Sumner v. General Motors Corp.*, 245 Mich. App. 653, 664, 633 N.W.2d 1 (2001), which states that a reversal voids the underlying judgment. And that general statement is true, as far as it goes. *See Wheeler v. John Deere Co.*, 935 F.2d 1090 (10th Cir. 1991) ("A judgment reversed by a higher court is 'without any validity, force or effect, and ought never to have existed.'"

-10-

(quoting *Butler v. Eaton*, 141 U.S. 240, 244 (1891); citing *Leroy v. City of Houston*, 906 F.2d 1068, 1076 (5th Cir. 1990) and *Riha v. Int'l Tel. & Tel. Corp.*, 533 F.2d 1053, 1054 (8th Cir. 1976))); *Hargrave-Thomas v. Yukins*, 450 F. Supp. 2d 711, 720-21 (E.D. Mich. 2006).

But the Sixth Circuit's decision was not a complete reversal. It left intact the finding of liability and remanded only for a recalculation of damages. The court of appeals stated:

> The district court held: (1) that IES had not properly withdrawn from the CBA in 2003, and therefore remained bound by the CBA until 2006; (2) that defendant The Llamas Group Corp. ("TLG") was the alter ego of IES; (3) that IES/TLG owed the Funds $167,501.34 in unpaid fringe-benefit contributions and $33,500.29 in liquidated damages for the years 2000-2006; and (4) that IES/TLG were not entitled to reimbursement or an offset for alleged overpayments to the Funds. We hold that the district court erred in its conclusion that IES remained bound by the CBA during the 2003-2006 time period, but otherwise find no error in its conclusions. Accordingly, we affirm in part, reverse in part, and remand.

*Laborers Pension Trust Fund-Detroit & Vicinity v. Interior Exterior Specialists Contsr. Grp., Inc.*, 394 F. App'x 285, 286 (6th Cir. Sept. 8, 2010) (unpublished). There is no doubt that the defendants were and still are indebted to the plaintiffs for the unpaid fringe-benefit contributions from 2000 to 2003. The Temporary Agreement still provides security for the plaintiffs' judgment in whatever amount it turns out to be.

As mentioned earlier, the Temporary Agreement served as the functional equivalent of a supersedeas bond. The obligation under such bonds remains even after the judgment on appeal is reversed as to the amount of damages. *See Beatrice Foods Co. v. New England Printing and Lithographing Co.*, 930 F.2d 1572 (Fed. Cir. 1991). In *Beatrice Foods*, the court held that a surety of a supersedeas bond posted to stay execution of a judgment pending appeal remained liable after the court of appeals affirmed the district court's judgment of liability but remanded to the district court with instructions to recalculate damages. The supersedeas bond in that case, like the

-11-

Temporary Agreement here, required the principal to prosecute the appeal "to effect." The court surveyed the case law and reasoned:

> If, after an appeal, there remains a question of whether any compensable harm was done, then the bond may be allowed to lapse. When the plaintiff has yet to prove any damages, it is unnecessary and unfair to ask the defendant to continue to provide a bond to ensure that money will be available should damages be proven. . . . Conversely, when an appellee has proven that damages are due, and the remand is merely to determine the proper quantum of injury, then it is not unreasonable that the bond remain effective during this recalculation period.

*Id.* at 1576 (citing *Tennessee Valley Auth. v. Atlas Mach. & Iron Works, Inc.*, 803 F.2d 794 (4th Cir. 1986); *Rector v. Massachusetts Bonding & Ins. Co.*, 191 F.2d 329 (D.C. Cir. 1951); and *Franklinville Realty Co. v. Arnold Constr. Co.*, 132 F.2d 828 (5th Cir. 1943)).

Similarly, the Sixth Circuit's decision in this case did not extinguish the defendants' underlying obligation to the plaintiffs, even though it left the amount of their liability undecided for the time being. Michigan case law supports this conclusion. *Roan v. Murray*, 219 Mich. App. 562, 567, 556 N.W.2d 893, 896 (1996) ("A security agreement is not required to state the amount of the debt secured."). A security agreement may create a security interest in the collateral based on an unspecified debt. In the present case, the Sixth Circuit's decision affirmed the debt but left the amount undetermined. The Temporary Agreement actually considered the possibility that the extent of defendants' obligation to the plaintiffs might be reduced by the outcome of the defendants' appeal.

The Court finds that the plaintiffs' security interest in the Held Payment was perfected on January 16, 2009 and remains today. The plaintiffs' interest in the fund is superior to PUDF's interest, which did not arise until it became a lien creditor nine months later.

C.  Attorney's Lien

As noted above, it appears that the plaintiffs and defendants have resolved the amount of damages now owed after remand from the court of appeals, and that amount leaves some of the Held Payment left over.  PUDF argues that as a lien creditor, its rights are superior to those of Steven Wrights attorney's lien, which did not attach until he filed his lien notice on February 5, 2010, almost three months after PUDF became a lien creditor.

1.  Charging Lien

Under Michigan law,

> [a]n attorneys' lien can be one of two kinds: (1) a general, retaining, or possessory lien, or (2) a special, particular, or charging lien.  A general or retaining lien is the right to retain possession of all documents, money, or other property of the client until the fee for services is paid.  *Kysor Industrial Corp. v. D.M. Liquidating Co.*, 11 Mich. App. 438, 444, 161 N.W.2d 452 (1968).  The special or charging lien is an equitable right to have the fees and costs due for services secured out of the judgment or recovery in a particular suit.  *Id.*; 3 Michigan Law & Practice, Attorneys & Counselors, § 161, pp. 486-487.  The attorneys' charging lien creates a lien on a judgment, settlement, or other money recovered as a result of the attorney's services.  *Doxtader v. Sivertsen*, 183 Mich. App. 812, 815, 455 N.W.2d 437 (1990).

*George v. Sandor M. Gelman, P.C.*, 201 Mich. App. 474, 477, 506 N.W.2d 583, 585 (1993).

The attorney's charging lien is a creature of the common law.  *Kysor*, 11 Mich. App. at 445, 161 N.W.2d 452.  It is well settled under Michigan law that attorney's charging liens "automatically attach to funds or a money judgment recovered through the attorney's services."  *George*, 201 Mich. App. at 477, 506 N.W.2d at 585.  However, an attorney's lien is subject to any rights in the property that are valid against the client at the time the lien attaches; that is, priority is determined by the first-in-time rule.  *Warner v. Tarver*, 158 Mich. App. 593, 598, 405 N.W.2d 109, 112 (1986); *see also Local 58, Int'l Bhd. of Elec. Workers v. G.T. Einstein Electric, Inc.*, 932 F. Supp. 974, 979 (E.D. Mich. 1996) (quoting *Warner*).

The plaintiffs and defendants argue that Wright's attorney's lien has priority over PUDF's lien because it will be first in time when an amended judgment is entered or a settlement agreement is executed. They contend that Wright's lien will attach at the moment an amended judgment is entered or a settlement reached so as to entitle the plaintiffs to the new amount of damages. PUDF argues that its lien is first in time because, even assuming that Wright's attorney's lien attaches upon a finalized settlement or judgment, no such final judgment or settlement has been entered, and PDUF already enjoys its status as a lien creditor. PUDF's argument on that score must win the day. By the parties' own admission, Wright's lien will not attach until a final settlement or judgment is entered. Therefore, PUDF's garnishment lien is first in time and has priority.

2. Equitable Lien

However, Michigan law acknowledges an attorney's right to recover fees from the fund created by the attorney's labors. *See Warner v. Tarver*, 158 Mich. App. 593, 405 N.W.2d 109 (1986). Therefore, even if Wright's lien is subordinate to PUDF's lien, equity demands that Wright be awarded a reasonable attorney's fee from the portion of the Held Payment to be refunded.

In *Warner*, the Michigan Court of Appeals held that, although an attorney's lien was subordinate to an earlier perfected security interest, the attorney was entitled to a reasonable attorney's fee from the proceeds that resulted from the services he rendered. The court reasoned:

> Plaintiffs . . . were all aware of the substantial efforts of [the defendant] and [his attorney] to collect the insurance proceeds from [the defendant]'s insurer. They knew that any resulting judgment would directly inure to their benefit. They also should have known that [defense counsel] would look to any insurance proceeds he recovered for payment of his fees. Despite this knowledge[] plaintiffs . . . never offered or provided any assistance to [the defendant] or [defense counsel] in their efforts to obtain a judgment for the insurance proceeds. They stood by while [defense counsel] obtained a judgment, and then they declared that the fund had been created solely by them through the existence of their property.

> However true the vendor's assertion may be concerning the original creator or source of the fund, it is clear that the insurance proceeds to which their security interests attached were produced by the sole efforts of [defense counsel]. Without [defense counsel]'s efforts there would have been no insurance proceeds to which the land contract vendor's security interests could attach. In this situation, it would be inequitable to allow the entire fund produced by the efforts of [defense counsel] to be applied toward the payment of the prior security interests and leave [defense counsel] to seek his fee solely from [the defendant].

*Id.* at 599-600, 405 N.W.2d at 112-13. The court required the secured parties to bear a *pro rata* share of the reasonable attorney's fees for defense counsel's services rendered in securing a judgment for the insurance proceeds. *Id.* at 601, 405 N.W.2d at 113.

The same principle applies here. If not for Steven Wright's work on appeal, the plaintiffs would be entitled to the entire Held Payment amount, and there would be no remainder at all. PUDF presumably was aware of Wright's efforts to reverse the trial court judgment in the Sixth Circuit, and PUDF did nothing to assist Wright in those efforts. PUDF's attempt to distinguish *Warner* by arguing that there is no judgment or settlement in the case is unconvincing. Credit for the existence of any refunded portion of the Held Payment belongs solely to Wright's efforts. Therefore, equity demands that Steven Wright be awarded a reasonable attorney's fee from the refunded portion of the Held Payment. The Court will allow Mr. Wright the opportunity to substantiate the amount of his fees.

### III.

The Court finds that the plaintiffs' security interest in the Held Payment is superior to PUDF's interest as a lien creditor, and that, although Steven Wright's attorney's charging lien is subordinate to PUDF's interest in the refunded portion of the Held Payment, Wright is entitled to reasonable a attorney's fee to be paid from the refunded portion of the Held Payment.

Accordingly, it is **ORDERED** that the plaintiffs' and defendants' joint motion seeking judicial determination of right to "held payment" pursuant to a Temporary Agreement, Michigan law and the parties' tentative settlement agreement [dkt. #248] is **GRANTED IN PART**.

It is further **ORDERED** that the plaintiffs' security interest in the Held Payment is superior to PUDF's interest as a lien creditor.

It is further **ORDERED** that upon execution of a settlement agreement or entry of final judgment, attorney Steven Wright shall be entitled to a reasonable attorney's fee to be paid from the refunded portion of the Held Payment.

It is further **ORDERED** that the Steven Wright must submit supporting documentation to substantiate the amount attorney's fees claimed **on or before November 15, 2011**.  If PUDF wishes to contest the amount claimed, it must file its papers in opposition **on or before November 22, 2011**.

It is further **ORDERED** that the balance of the Held Payment that remains after distributions are made to the plaintiffs and Steven Wright, if any there be, shall be transferred to PUDF in partial satisfaction of its judgment in Case No. 05-70110, and if amounts remain thereafter, they shall be used to satisfy the balance of attorney Wright's charging lien, and then be tendered to the defendants.

                                                s/David M. Lawson  
                                                DAVID M. LAWSON  
                                                United States District Judge

Dated:   November 2, 2011

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 2, 2011.

s/Deborah R. Tofil
DEBORAH R. TOFIL